Fourth Court of Appeals
San Antonio, Texas



## MEMORANDUM OPINION

No. 04-24-00058-CV

**IN THE INTEREST OF N.I.L.**, Jr., N.T.L., and N.A.E.L., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01239
Honorable Raul Perales, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: July 17, 2024

AFFIRMED

Appellant A.G.G. challenges the trial court's order terminating her parental rights to her children, N.I.L., Jr., N.T.L., and N.A.E.L.[1]  She argues the evidence is legally and factually insufficient to support the trial court's best interest finding.  We affirm the trial court's order.

### BACKGROUND

In April 2022, the Texas Department of Family and Protective Services became involved with A.G.G. and her children after it had received a referral, alleging A.G.G. was using illegal drugs and neglecting the children.  By July 2022, the Department initiated emergency removal proceedings and sought temporary managing conservatorship of the children as well as termination

---

[1] To protect the identity of the minor children in this appeal, we refer to the parent and children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

of A.G.G.'s parental rights. These actions were initiated because the Department had received a report A.G.G. shot her boyfriend while her children were present in the family's apartment.[2] The trial court signed an emergency removal order naming the Department temporary sole managing conservator of the children, and the children were placed with their paternal grandmother. The Department also created a family service plan for A.G.G. Due to concerns A.G.G. continued to use illegal drugs and failed to complete her service plan requirements, the Department proceeded with seeking termination of her parental rights.

On January 8, 2024, the trial court held a one-day bench trial and heard testimony from the Department caseworker assigned to the case, A.G.G.'s counselor, and the children's paternal grandmother. The trial court ultimately ordered A.G.G.'s parental rights terminated based on statutory grounds (O) and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE §§ 161.001(b)(1)(O) (failure to comply with court-ordered service plan) and (P) (used a controlled substance in a manner endangering children and failed to complete court-ordered substance abuse treatment program). It further found termination of A.G.G.'s parental rights was in the children's best interest. *See id*. § 161.001(b)(2). A.G.G. now appeals, arguing the evidence is legally and factually insufficient to support the trial court's best interest finding because there was no evidence of several *Holley* factors, and the evidence produced was cursory.

## STANDARD OF REVIEW

An order terminating parental rights must be supported by clear and convincing evidence showing (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the child's best interest. *See id*. § 161.001(b). "'Clear and convincing evidence' means the measure or degree of proof that

---

[2] The record reflects A.G.G.'s boyfriend was not the children's biological father.

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. To determine whether this heightened burden of proof was met, we use a heightened standard of review to decide whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Under it, the factfinder is the sole judge of the weight and credibility of the evidence, including the witnesses' testimony. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We do not reweigh witness credibility issues, and we "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

"When reviewing the sufficiency of the evidence, we apply the well-established [legal and factual sufficiency] standards." *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (alteration in original) (quoting *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.)). A legal sufficiency review of the evidence requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.O.A.*, 283 S.W.3d at 344 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (internal quotation marks omitted). We must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). However, we do not disregard undisputed evidence even if it does not support the trial court's finding; to do so would not comport

with the heightened burden of proof by clear and convincing evidence. *See id.* (citing *J.F.C.*, 96 S.W.3d at 266).

Under a factual sufficiency review, we perform "an exacting review of the entire record" and consider disputed or conflicting evidence. *In re A.B.*, 437 S.W.3d 498, 500, 502–03 (Tex. 2014); *J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.O.A.*, 283 S.W.3d at 345 (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted).

## BEST INTEREST

### *Applicable Law*

In Texas, there is a strong presumption a child's best interest is served by keeping the child with the parent, and the burden is on the Department to rebut this presumption with clear and convincing evidence. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re I.I.T.*, 648 S.W.3d 467, 476 (Tex. App.—San Antonio 2021, no pet.). When considering the evidence produced, the trial court must presume a child's prompt and permanent placement in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Texas Legislature has also provided a list of statutory factors set forth in section 263.307(b) of the Texas Family Code[3] to aid courts in determining whether a parent is willing and able to provide the child with a

---

[3] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child or the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability

safe environment. *Id.* § 263.307(b); *I.I.T.*, 648 S.W.3d at 476–77. And, the Texas Supreme Court has provided a similar list of factors outlined in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) to help determine a child's best interest.[4] Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when the evidence shows the parental relationship endangered the child's safety." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.).

Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *C.H.*, 89 S.W.3d at 28. And "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A best-interest analysis may [also] consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *Id.*

### *Application*

Here, the record shows the Department became involved with the family due to concerns about A.G.G.'s illegal drug use. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding parent's illegal substance abuse places children in emotional and physical danger). Department caseworker Maria

---

of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system is available to the child. *See id.*

[4] These factors are (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

Arroyo testified she was assigned to work with the family for the entirety of the case, and at the beginning of the case, A.G.G. tested positive for amphetamines, methamphetamines, opiates, and marijuana. Arroyo testified the Department made a service plan for A.G.G., and it required A.G.G. to complete a substance abuse treatment program to address her drug use. Arroyo testified A.G.G. did not complete the program even though she spoke to A.G.G. several times about the consequences of not completing the program and relapsing. She further testified A.G.G. admitted to her she continued to use drugs, specifically methamphetamine and marijuana, with the children's father throughout the pendency of the case. The trial court also heard testimony from the children's paternal grandmother, who testified she believed the trial court should terminate A.G.G.'s parental rights because A.G.G. was "still using drugs." "Illicit drug use is relevant to multiple *Holley* factors, including the child[ ]'s emotional and physical needs now and in the future, the emotional and physical danger to the child[ ] now and in the future, [a parent's] parental abilities, the stability of [the parent's] home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). Thus, when viewing this evidence in the light most favorable to the trial court's best interest finding and after performing an exacting review of the record, we conclude the trial court could have formed a firm belief or conviction A.G.G. continued to use illegal drugs, and therefore, termination was in the children's best interest.

The Department also produced evidence showing A.G.G. exposed the children to domestic violence that also led to the children's removal. *See In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) ("Evidence of the parents' history of domestic violence supports the trial court's best[-]interest[ ] findings."). Arroyo testified the Department removed the children from their home after A.G.G. shot her paramour while the children were present in the family's apartment. Arroyo testified A.G.G. told her "it was

a self-defense incident," and the children "did not see what happened." Arroyo further testified although A.G.G. was not arrested for the incident, the Department was concerned and created a service plan requiring A.G.G. to seek counseling and complete domestic violence classes. The trial court then heard testimony from Boone Mitchell, A.G.G.'s counselor who worked at Family Violence Prevention Services. Mitchell testified A.G.G. had been referred to complete a ten-session group counseling program known as Becoming Safe. She testified the program consisted of eighteen hours of class instruction for survivors of domestic violence. She stated A.G.G. attended four group sessions, but she did not complete the program; she further testified the last class A.G.G. attended occurred on October 31, 2023. "Evidence of domestic violence in the home supports a trial court's best-interest finding under the third *Holley* factor—emotional and physical danger to the child now and in the future . . . ." *In re S.A.*, No. 04-17-00571-CV, 2018 WL 521626, at *4 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.) ("Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest."). And as indicated above, "[a] trier of fact may measure a parent's future conduct by [her] past conduct" in a best-interest analysis. *E.D.*, 419 S.W.3d at 620. Accordingly, when viewing the evidence under the appropriate standards of review, the trial court could have formed a firm belief or conviction A.G.G. would expose her children to domestic violence situations in the future and she was unwilling to effect positive changes due to her disinterest in completing the domestic violence courses.

The Department also presented evidence A.G.G. did not complete her service plan. *See In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at *6 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.) (explaining parent's performance under service plan is relevant to several *Holley* factors and statutory factors set out in section 263.307(b)); *See O.N.H.*, 401 S.W.3d at 687 ("Non-compliance with a service plan is probative of a child's best interest."). Arroyo testified

the Department's service plan required A.G.G. to obtain and maintain housing; obtain and maintain employment; complete parenting and domestic violence classes; complete a substance abuse treatment program; and attend counseling. When asked which requirements A.G.G. completed, Arroyo testified, "Nothing." Arroyo specified A.G.G. engaged in domestic violence and parenting classes as well as a substance abuse treatment program; however, she failed to complete any of these services. Arroyo further testified she tried to set up monthly face-to-face meetings with A.G.G.; however, A.G.G. threatened her and told her "she knew people and that they were going to find where I lived." Arroyo testified despite the fact A.G.G. made her feel unsafe, she continued to emphasize to A.G.G. the importance of completing her service plan. In response, A.G.G. told her she planned to engage in services, and she understood what she was supposed to do for her children. However, based on the evidence showing A.G.G. failed to complete her services, the trial court could have disbelieved A.G.G.'s plan to complete services and formed a firm belief or conviction A.G.G. was unwilling to effectuate positive changes necessary for the return of her children. It therefore could have further determined termination of A.G.G.'s parental rights was in the children's best interest.

The foregoing evidence is also relevant to A.G.G.'s parenting abilities. *See* TEX. FAM. CODE § 263.307(b)(10); *id*. § 263.307(b)(11); *id*. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. As set out above, A.G.G. continued to engage in illegal drug use with the children's father after her children were removed from her home, and she failed to address the Department's concerns about domestic violence. When asked about A.G.G.'s visitations with her children, Arroyo testified A.G.G. was inconsistent and "would have inappropriate conversations with the oldest [child,]" who was five years old. Arroyo testified A.G.G. was advised not to mention anything about the case, make false promises, or ask the children where they preferred to live; however, A.G.G. would have "those conversations with the oldest." Arroyo further testified by

the end of the case, the visits "went well[,]" but recently, A.G.G. told her it would be in the children's best interest to remain with their paternal grandmother. Accordingly, the trial court could have determined A.G.G. lacked the ability needed to parent her children. *See Holley*, 544 S.W.2d at 371–72.

At the time of trial, the children were five, four, and two years old and too young to express their desires. In such instances, the factfinder may consider whether the children have bonded with their foster family, are well cared for by them, and have spent minimal time with their parent. *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied). Here, in addition to Arroyo's testimony regarding A.G.G.'s visitations and preference for the children to remain with their paternal grandmother, the trial court also heard testimony from the children's paternal grandmother. She testified the children had been living with her since December 2022, and life was "going well" with the children. She explained in the beginning, "it was a little hard for all of us," but now, "it's going well." She testified the children were happy and all their emotional and physical needs were being met. She further testified she believed A.G.G. was unable to meet these needs because she "was still using drugs," "not stable," and needed "to work out a lot of things, you know, in her mind." When asked whether she planned to adopt the children, she testified, "Yes, I am." Thus, when viewing this evidence under the appropriate standards of review, the trial court could have formed a firm belief or conviction the children were being well-cared for by their paternal grandmother, and as a result termination of A.G.G.'s parental rights was in the children's best interest.

After reviewing the evidence above in light of the *Holley* and statutory factors, and indulging the necessary presumptions, we conclude the trial court could have reasonably formed a firm belief or conviction termination of A.G.G.'s parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 371–72; *R.R.*, 209 S.W.3d at 116; *J.M.G.*, 608 S.W.3d at 53;

TEX. FAM. CODE §§ 263.307(a) & (b). Contrary to A.G.G.'s assertion there was no evidence of several *Holley* factors and the evidence was cursory, the Department produced evidence showing A.G.G., by her own admission, continued to engage in illegal drug use, failed to complete her service plan, did not exhibit proper parenting skills, and believed the children should remain with their paternal grandmother. The Department also produced evidence the children were doing well in their current placement with their paternal grandmother, who planned to adopt them. And, the trial court was permitted to consider this direct and circumstantial evidence, and we must defer to the trial court's credibility determinations. *See J.P.B.*, 180 S.W.3d at 573; *E.D.*, 419 S.W.3d at 620. Furthermore, we remain mindful evidence of one factor can be sufficient to support a trial court's best interest finding. *See E.D.*, 419 S.W.3d at 620. Accordingly, when reviewing this evidence under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's best interest finding. *See J.O.A.*, 283 S.W.3d at 344–45.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Luz Elena D. Chapa, Justice